UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CITY PARKWAY V, INC., a Nevada not-for-profit corporation; CITY PARKWAY IV A, INC., a Nevada not-for-profit corporation; OFFICE DISTRICT PARKING I, INC., a Nevada not-for-profit corporation,<br><br>  Plaintiffs,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY, a foreign corporation; DOE DEFENDANTS, 1 through 10 inclusive, and ROE CORPORATIONS, I through X, inclusive,<br><br>  Defendants.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>  Counter Claimant. | 2:09-CV-01299-PMP-GWF<br><br>O R D E R |

Presently before the Court is Plaintiffs' Motion to Alter or Amend the Court's Order (Doc. #59), filed on September 2, 2010. Defendants filed a Response (Doc. #62) on September 17, 2010. Plaintiffs filed a Reply (Doc. #64) on September 27, 2010. Also before the Court is Defendants' Motion to Sever and Enter Judgment (Doc. #61) filed on September 3, 2010. Plaintiffs filed a Response (Doc. #63) on September 20, 2010. Defendants filed a Reply (Doc. #65) on September 30, 2010.

## I. BACKGROUND

The parties are familiar with the facts in this action and the Court will not repeat them here except as necessary. This litigation involves the respective duties and obligations of the parties to dispose of and/or remediate contaminated ground water which may be excavated with the development of certain property ("Property") to be developed as Symphony Park on a 61 acre tract of land formerly utilized as a rail yard by Defendant Union Pacific Railroad Company ("UPRC"). In August 2010, this Court granted Defendant UPRC's request for summary judgment and made the following findings of fact and conclusions of law (exhibits referenced are from Defendants' Motion for Summary Judgment (Doc. #34)):

**FINDINGS OF FACT**

(1) The PSA (Exhibit A), the UPRC Deed (Exhibit B), and the Memorandum of Rights (Exhibit C) are the operative documents by which UPRC sold the Property in 1996.

(2) UPRC sold the Property to PLY Stadium Partners pursuant to the PSA (Exhibit A) dated October 21, 1996.

(3) PLY Stadium Partners assigned its interest and obligations in the PSA (Exhibit A) to Nevada Stadium Partners by the Assignment (Exhibit D) dated November 15, 1996.

(4) The UPRC Deed (Exhibit B), which was dated November 12, 1996, and recorded on November 18, 1996, transferred title to the Property from UPRC to Nevada Stadium Partners, and specifically incorporated the terms and conditions of the PSA.

(5) The Memorandum of Rights (Exhibit C) was recorded in the Official Records of the Recorder of Clark County on November 18, 1996 and re-recorded on December 2, 1996. The Memorandum of Rights documents the agreements between UPRC, PLY Stadium Partners, and Nevada Stadium Partners, and also specifically incorporates the terms and conditions of the PSA.

(6) The PSA (Exhibit A), UPRC Deed (Exhibit B), Memorandum of Rights (Exhibit C), and Assignment (Exhibit D) establish the terms and conditions which apply to UPRC, PLY Stadium Partners, Nevada Stadium Partners, and all successive owners of the Property, including City Parkway V, Inc., City Parkway IV A, Inc., and Office District Parking I, Inc. (collectively referred to herein as the "City

Parkway Parties").

(7) The terms and conditions of the UPRC sale of the Property evidenced by Exhibits A, B, C, and D are clear and unambiguous and may be construed, based on the clear meaning of the terms, by the Court as a matter of law.

(8) UPRC's environmental responsibilities for the Property are limited to the terms of the NDEP order of remediation, including those referenced in PSA.

(9) UPRC's "Environmental Obligations" set out in Article III, Section 3.2 of the PSA are covenants which run with the land and benefit all successive owners of the Property, including the City Parkway Parties.

(10) The right of UPRC to receive "Excess Remediation Costs" as described in Article II, Section 2.3(a)(iii) of the PSA is a covenant which runs with the land and obligates all successive owners of the Property, including the City Parkway Parties.

(11) The "Buyer's Release" as described in Article III, Section 3.3 of the PSA is a covenant which runs with the land and binds all successive owners of the Property, including the City Parkway Parties.

(12) Pursuant to the "Buyer's Release," UPRC has been released from any environmental obligation not contained in the PSA, and/or beyond the scope of the NDEP order of remediation referenced in the PSA, and that release is binding on all successive owners of the Property, including the City Parkway Parties.

(13) The "As Is" provision set forth in Article III, Section 3.1 of the PSA is a covenant which runs with the land and binds all successive owners of the Property, including the City Parkway Parties.

(14) The City Parkway Parties knew of the relevant covenants before Plaintiff City Parkway V, Inc. ("City Parkway V") acquired the Property.

(15) The City Parkway Parties have acknowledged that the relevant covenants run with the Property.

(16) The City Parkway Parties, City Parkway V, Inc., City Parkway IV A, Inc., and Office District Parking I, Inc. are all successor owners of the Property (Lot 5).

## **CONCLUSIONS OF LAW**

(1) The terms and conditions of the UPRC sale of the Property evidenced by Exhibits A, B, C, and D are clear and unambiguous and may be construed, based on the clear meaning of the terms, by

        the Court as a matter of law.

(2) The PSA, UPRC Deed, and Memorandum of Rights create covenants which run with the land (Lot 5) and are binding on the City Parkway Parties.

(3) The relevant covenants which run with the land are:
    (a) The "As Is" sale described in Article III, Section 3.1 of the PSA;
    (b) The "Buyer's Release" described in Article III, Section 3.3 of the PSA;
    (c) The "Environmental Obligations" set out in Article III, Section 3.2 of the PSA; and
    (d) The right of UPRC to receive "Excess Remediation Costs" as provided for by Article II, Section 2.3(a)(iii) of the PSA.

(4) UPRC's environmental responsibilities for the Property are limited to the terms of the NDEP order of remediation, including those referenced in the PSA.

(5) Even though City Parkway V was not a party to the PSA, the City Parkway Parties are bound by the PSA, UPRC Deed, and Memorandum of Rights since: (1) the covenants in those transaction documents are clear and unambiguous and run with the land; and (2) the City Parkway Parties knew of the relevant covenants regarding environmental obligations before City Parkway V acquired the Property.

(6) Even though the City Parkway Parties did not request or accept an assignment or transfer of interest under the PSA, the City Parkway Parties are bound by the relevant covenants, including the covenant requiring the current owner of the Property to reimburse UPRC for Excess Remediation Costs, since, pursuant to Nevada's recording statute, NRS 111.320, the City Parkway Parties were on notice of the recorded UPRC Deed and recorded and re-recorded Memorandum of Rights.

(7) In determining the intent of the original parties to the sale of the Property with respect to UPRC's entitlement to Excess Remediation Costs, all of the transaction documents by which the Property was sold (i.e., Exhibits A, B, C, and D) must be viewed in their entirety.

(8) An examination of the transaction documents in their entirety, as opposed to focusing on one word or phrase, establishes that UPRC is entitled to Excess Remediation Costs for a broad range of potential development projects based on the areas of development, not the specific type of development.

(9) UPRC is entitled to Excess Remediation Costs under Article II, Section 2.3(a)(iii) of the PSA even if the development project is not

a sports stadium where sports will be played.

Plaintiffs request that this Court reconsider the findings of fact and conclusions of law in its 2010 Order (Doc. #56). Specifically, Plaintiffs request the Court strike paragraphs (14) and (15) of the findings of fact because they are unsupported by the evidence submitted by the parties. Plaintiffs also request that the Court alter, amend or strike paragraphs (7) through (9) of the conclusions of law. Additionally, Plaintiffs request that the Court alter, amend, or strike references to the "NDEP order of remediation" in paragraphs (8) through (12) of the findings of fact and paragraph (4) of the conclusions of law because no such document exists. In addition, Plaintiffs request the Court strike paragraphs (14) to (16) of the findings of fact and paragraphs (7) to (9) of the conclusions of law because those paragraphs contain relief not requested in Defendants' Motion. Defendant responds that the Court's findings are supported by the evidence submitted by the parties. Additionally, Defendant states that it is apparent, and Plaintiffs know or should know, that the "NDEP order of remediation" refers to communications between UPRC and the Nevada Department of Conservation and Natural resources, Division of Environmental Protection ("NDEP") regarding a plan for remediation of the Property.

**II. DISCUSSION**

Reconsideration of a prior ruling is appropriate only in limited circumstances, such as the discovery of new evidence, an intervening change in controlling law, or where the initial decision was clearly erroneous or manifestly unjust. Nunes v. Ashcroft, 375 F.3d 805, 807-08 (9th Cir. 2004). "A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." Western Shoshone Nat'l Council v. United States, 408 F. Supp. 2d 1040, 1053 (D. Nev. 2005).

In their Motion, Plaintiffs do not present new evidence or a change in controlling law. Rather, Plaintiffs contend that the challenged portions of the Court's 2010 Order are clearly erroneous. With the exception of paragraph (15) of the findings of fact, the findings

of fact and conclusions of law are not clearly erroneous.  There is not sufficient evidentiary support for the Court's findings in paragraph (15) in the findings of fact.  Paragraph (15), therefore, will be stricken from the Order.  Although there is not sufficient evidence to find that the City Parkway Parties acknowledged that the relevant covenants run with the Property, Plaintiffs' lack of acknowledgment is immaterial as the Court has found that the relevant covenants run with the Property.

The remainder of the 2010 Order is not clearly erroneous and stands.  However, in light of the parties' confusion regarding the 2010 Order the Court offers the following clarifications.  The NDEP order of remediation referenced in Defendants' Motions and the Court's 2010 Order refers to communications between UPRC and NDEP regarding a plan for remediation of the Property.  Such communications include, but are not limited to, the letter dated September 10, 1991 from NDEP to UPRC.  Additionally paragraphs (14) and (16) of the findings of fact shall read:

> (14) The City Parkway Parties had knowledge of and/or were on constructive notice of the covenants relating to the Property contained in the Purchase and Sale Agreement ("PSA"), the Grant, Bargain, and Sale Deed from UPRC to Nevada Stadium Partners Limited Partnership ("UPRC Deed"), and the Memorandum of Rights between UPRC and Nevada Stadium Partners Limited Partnership ("Memorandum") before Plaintiff City Parkway V, Inc. ("City Parkway V") acquired the Property.
>
> (16) The City Parkway Parties, City Parkway V, Inc., City Parkway IV A, Inc., and Office District Parking I, Inc. are all successor owners of the Property.

Additionally, paragraphs (7) through (9) of the conclusions of law shall read:

> (7) In determining the intent of the original parties to the sale of the Property with respect to UPRC's entitlement to Excess Remediation Costs, all of the transaction documents by which the Property was sold must be viewed in their entirety.
>
> (8) An examination of the transaction documents and specifically Article II, Section 2.3(a)(iii) of the PSA establishes that UPRC is entitled to Excess Remediation Costs for a broad range of potential development projects based on the areas and/or locations of the Property to be developed as well as the uses of such development (i.e. subsurface parking for the general public) in accordance with those areas, locations, and uses listed in Article II, Section 2.3(a)(iii) of the PSA.

(9) References to developments mentioned in Article II, Section 2.3(a)(iii) of the PSA serve only as examples of the type of development projects for which UPRC would be entitled to Excess Remediation Costs and are not meant to be an exhaustive list of development projects for which UPRC is entitled to Excess Remediation Costs.

Finally, whether the proposed development of the Property falls within the categories for which UPRC is entitled to Excess Remediation Costs has not been decided by this Court.

## III. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Alter or Amend the Court's Order (Doc. #59) is GRANTED to the extent that paragraph (15) of the findings of fact is stricken and the Court has provided the above statements clarifying its prior findings. Plaintiffs' Motion is DENIED in all other respects.

IT IS FURTHER ORDERED that Defendants' Motion to Sever and Enter Judgment (Doc. #61) is hereby DENIED.

DATED: February 2, 2011.

_____
PHILIP M. PRO
United States District Judge